CASSIE HUNGERFORD *vs.* JAMES K. O'BRIEN, impleaded, etc.

July 27, 1887.

**Promissory Note—Liability of Guarantor.**—One who, before maturity, unconditionally guaranties the payment of a promissory note, becomes absolutely liable upon default of the maker.

**Same—Notice to Guarantor of Non-Payment.**—The guarantor is not entitled to notice of the maker's default. The mere neglect of the holder to pursue a remedy against the maker does not discharge the obligation of the guarantor.

**Same—Notice to Prior Indorser.**—So, if the paper had been previously indorsed to the guarantor, the failure of the holder at maturity to make demand of the maker, and give notice to the prior indorser, so as to fix his liability, does not operate to discharge the guarantor.

The plaintiff brought this action in the district court for Otter Tail county upon a promissory note made by the defendant Charles J. Sawbridge, the payment of which was guarantied by the defendant O'Brien. The action was tried before *Baxter*, J., and a jury, and a verdict directed for plaintiff. Defendant O'Brien appeals from an order refusing a new trial.

*Rawson & Houpt*, for appellant, cited *Nelson* v. *Munch*, 28 Minn. 314; *Hammel* v. *Beardsley*, 31 Minn. 314; *Newcomb* v. *Raynor*, 21 Wend. 108, (34 Am. Dec. 219;) *Lynch* v. *Reynolds*, 16 John. 41; *Claridge* v. *Dalton*, 4 M. & S. 226, 232; *English* v. *Darley*, 2 Bos. & P. 61; *Smith* v. *Knox*, 3 Esp. 46; *Bank of U. S.* v. *Hatch*, 6 Pet. 250; *White* v. *Hopkins*, 3 W. & S. 99, (37 Am. Dec. 541;) *Newton Wagon Co.* v. *Diers*, 10 Neb. 284, (4 N. W. Rep. 995;) *Oxford Bank* v. *Haynes*, 8 Pick. 423, (19 Am. Dec. 334;) *Talbot* v. *Gay*, 18 Pick. 534; *Wheaton* v. *Wheeler*, 27 Minn. 464; *Allis* v. *Ware*, 28 Minn. 166; *Campion* v. *Whitney*, 30 Minn. 177; *Rhett* v. *Poe*, 2 How. 457; *Reynolds* v. *Douglass*, 12 Pet. 497; *Davis* v. *Wells*, 104 U. S. 159; *Second Nat. Bk.* v. *Gaylord*, 34 Iowa, 246; *Rodabaugh* v. *Pitkin*, 46 Iowa, 544; 1 Daniel, Neg. Inst. 295, 296; Thomson on Bills, 393;

Story, Promissory Notes, §§ 420, 423, 434; Story, Bills, § 429; Edwards on Bills, 570.

*E. E. Corliss*, for respondent.

DICKINSON, J.[1] The defendant Sawbridge made his negotiable promissory note, which was indorsed to one Gage, who indorsed it in blank to the defendant O'Brien, and he, before maturity, transferred it for value to the plaintiff, indorsing upon the note and signing this guaranty: "For value, I hereby guaranty the payment of the within note to Cassie Hungerford or bearer." The note was not paid. Nothing was done by the plaintiff at the maturity of the note to fix the liability of the indorser Gage. The defendant O'Brien had no notice of the non-payment of the note until more than a year after its maturity. Upon the trial of the issue raised by the answer of the defendant O'Brien, evidence was presented tending to show that the maker of the note was solvent at the time of its maturity, but has since become insolvent; and that the indorser, Gage, was also solvent. The court directed a verdict for the plaintiff.

The nature of the obligation of the guarantor is affected by the character of the principal contract to which the guaranty relates. The note expressed the absolute obligation of the maker to pay the sum named at the specified date of maturity or before. The guaranty of "the payment of the within note" imported an undertaking, without condition, that, in the event of the note not being paid according to its terms,—that is, at maturity,—the guarantor should be responsible. The non-payment of the note at maturity made absolute the liability of the guarantor, and an action might at once have been maintained against him without notice or demand. Such was the effect of the unqualified guaranty of the payment of an obligation which was in itself absolute and perfect and certain as respects the sum to be paid, and the time when payment should be made,—all of which was known to the guarantor, and appears upon the face of the contract. The liability of the guarantor thus becoming absolute by the non-payment of the note, the neglect of the holder to pursue such remedies as he might have against the maker (the guarantor not hav-

[1] Berry, J., because of illness, took no part in this case.

ing required him to act) would not discharge the already fixed and
absolute obligation of the guarantor, nor would neglect to notify the
guarantor of the non-payment have such effect. ' *Brown* v. *Curtiss*, 2
N. Y. 225; *Allen* v. *Rightmere*, 20 John. 365, (11 Am. Dec. 288;)
*Newcomb* v. *Hale*, 90 N. Y. 326; *Read* v. *Cutts*, 7 Greenl. 186, (22
Am. Dec. 184; *Breed* v. *Hillhouse*, 7 Conn. 523; *Campbell* v. *Baker*,
46 Pa. St. 243; *Roberts* v. *Riddle*, 79 Pa. St. 468; *Bank* v. *Sinclair*,
60 N. H. 100; *Heaton* v. *Hulbert*, 3 Scam. 489; *Dickerson* v. *Derrick-
son*, 39 Ill. 574; *Penny* v. *Crane Mfg. Co.*, 80 Ill. 244; *Clay* v. *Edg-
erton*, 19 Ohio St. 549; *Wright* v. *Dyer*, 48 Mo. 525. See, also, *Vi-
nal* v. *Richardson*, 13 Allen, 521, modifying former decisions of the
same court.

It follows that the fact that the maker had become insolvent since
maturity, or that a mortgage security had become impaired by de-
preciation in the value of the property, was no defence; nor was it a
defence that the guarantor was not notified of the non-payment of the
note.   We are aware that the position here taken is opposed by some
decisions.   No valid agreement was shown between the maker and
the plaintiff extending the time of payment.   From the position above
taken, it logically follows that the neglect of the guarantee to take the
steps necessary to fix the liability of the indorser, Gage, did not dis-
charge the guarantor.   The latter, by his unqualified guaranty of the
payment of the note, took it upon himself to see that the note was
paid, and was therefore not entitled to notice of its non-payment.
(Authorities above cited.)   For the same reason, the plaintiff did not
owe to the guarantor the duty of taking the steps necessary to fix the
contingent liability of the indorser by demand and notice of dishonor.
*Phillbrooks* v. *McEwen*, 29 Ind. 347; *Lang* v. *Brevard*, 3 Strob. Eq.
(So. Car.) 59; *Pickens* v. *Finney*, 12 Smedes & M. 468; 2 Lead. Cas.
Eq., notes to *Rees* v. *Berrington*.   No such obligation is involved in
this contract of guaranty.   Even in the case of an ordinary indorse-
ment, the holder, at maturity, is under no obligation to his indorser
to give notice of dishonor to prior indorsers or parties.' The last in-
dorser becomes liable when he alone is notified, and he in turn may
fix the liability of prior parties by giving notice to them.

Order affirmed.

MITCHELL, J., (*dissenting.*)   I am unable to concur in the proposition that the plaintiff owed no duty to O'Brien to take steps, at the maturity of the note, to fix the liability of Gage, the indorser.   It does not seem to me that the fact that O'Brien's guaranty of payment was unconditional and absolute is at all decisive of the question. As between the parties to this action, O'Brien occupied the position of surety, who, in case he had to pay the note, would have recourse against Gage, the indorser, *provided* steps were taken to fix the liability of the latter.   The question, therefore, is to be determined by the equitable principles which govern the relative rights and duties of creditor and surety.

It is a well-settled rule of equity that any laches by the creditor in the care or management of collateral remedies or securities, if loss ensues, will discharge the surety *pro tanto.   Nelson* v. *Munch,* 28 Minn. 314, 322, (9 N. W. Rep. 863.)   As a surety, on payment of the debt, is entitled to all the securities of the creditor, if, through the negligence of the creditor who has them in his possession and under his control, a security, to the benefit of which the surety is entitled, is lost or not properly perfected, the surety, to the extent of such security, will be discharged.   *Wulff* v. *Jay,* L. R. 7 Q. B. 756.   And we can see no difference in this respect whether the security is chattel or personal.   This is not a case of mere passiveness by the creditor in not taking steps to enforce collection of the debt at maturity, but an omission to take steps to perfect and fix the liability of the indorser, which amounted to positive negligence.   He had possession and control of the note on the day of its maturity, and consequently was the only person who could present it for payment, or who would know whether or not it was paid, and hence was the only person in position to give notice to the indorser in case of its non-payment. To require him to do this, would, I think, be both good business morals and good law.